UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIE RICHARDSON, <br> Plaintiff, <br> v. <br> KINSALE INSURANCE COMPANY, <br> Defendant. | Case No. 18-cv-02962-DMR <br><br> **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 37, 47 |

In this action, Plaintiff Lillie Richardson sues Kinsale Insurance Company ("Kinsale") regarding its refusal to indemnify its insured, ENE Elite National Escrow, Inc. ("ENE") in state court proceedings. The parties filed cross-motions for summary judgment. [Docket Nos. 37 (Pl.'s Mot.), 47 (Def.'s Mot.).] The court held a hearing on May 23, 2019. For the following reasons, Kinsale's motion is granted. Richardson's motion is denied.

## I. REQUEST FOR JUDICIAL NOTICE

Kinsale asks the court to take judicial notice of two documents related to the underlying state court action, *Richardson v. ENE Elite National Escrow Inc.*, Sonoma County Superior Court Case No. SCV258812. [Docket No. 47-2 (Def.'s RJN).]

Federal Rule of Evidence 201 permits a court to take judicial notice of facts not subject to reasonable dispute, meaning that they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[A] court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).

Exhibit A is Richardson's July 6, 2017 trial brief in the state court action. Richardson

objects, asserting that the court may take judicial notice of the brief's existence and filing in state court, but not the facts contained therein. [Docket No. 55.] Exhibit A is judicially noticeable as a document filed in the state proceeding underlying this action. *See U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (quotation omitted)). However, Kinsale does not identify which specific facts contained therein are allegedly "not subject to reasonable dispute" under Rule 201(b). Therefore, the court takes judicial notice only as to the existence of the document and the existence of the facts contained therein, and not the truth of the matters stated in it. *Lee*, 250 F.3d at 690; *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").

The court grants Kinsale's unopposed request for judicial notice of Exhibit B, which is a minute order summarizing court proceedings on July 6, 2017 in the state court action.

## II. BACKGROUND

### A. The State Court Action

The following facts are undisputed unless otherwise noted. In 2013, Richardson refinanced real property in Sebastopol, California which she had owned for over 40 years. Lytle Decl., Apr. 8, 2019, ¶ 3; Ex. 1 (State Court Compl.) ¶¶ 5, 6.[1] ENE acted as the escrow holder in the transaction. Lytle Decl. ¶ 4; State Court Compl. ¶ 6.

The preliminary title report stated that current and delinquent taxes were due on the property, with the delinquent taxes totaling $9,091.39. Lytle Decl. ¶¶ 6, 7. Richardson deposited funds into escrow to be applied toward the property taxes and executed escrow instructions

---

[1] Kinsale filed objections to portions of Lytle's declaration in support of Richardson's motion for summary judgment, arguing that many of the statements in his declaration are improper legal conclusions and improper lay opinion testimony. [Docket No. 46-1.] The objections are denied as moot, as the court did not rely on those statements in reaching its decision on the motions. The court notes that Kinsale's objections violated Local Rule 7-3(a), which provides that "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum."

2

directing ENE to pay both the current and delinquent taxes in full from the escrow. *Id*. at ¶ 8. ENE failed to comply with the escrow instructions, instead paying the current taxes in full and paying only $2,850.72 toward the delinquent taxes. *Id*. at ¶ 9; State Court Compl. ¶¶ 9, 10. According to Richardson, the escrow officer paid only a portion of the delinquent taxes due to a misreading of the Sonoma County Tax Collector's website and failure to confirm the accuracy of the amount due. Lytle Decl. ¶¶ 12-14.

At the close of escrow in November 2013, Richardson believed that all of the current and delinquent taxes had been paid. Lytle Decl. ¶ 17; State Court Compl. ¶ 11. However, in February 2016, Richardson received a delinquent tax notice from the Sonoma County Assessor's Office and learned that her property would be sold at a tax sale in July 2016 if the delinquent taxes were not paid. Lytle Decl. ¶¶ 18, 19. The lender also commenced foreclosure proceedings against the property. *Id*. at ¶ 20.

On May 17, 2016, Richardson filed suit against ENE in Sonoma County Superior Court alleging claims for elder financial abuse, breach of contract, and negligence based on ENE's actions with respect to handling the escrow (the "state court action"). State Court Compl. ENE tendered the state court action to its insurer, Kinsale, under its professional liability policy. On August 11, 2016, Kinsale denied coverage to ENE for the claims alleged in the state court action. Compl. ¶ 11.

At some point during the state court action, ENE agreed not to oppose Richardson's trial presentation and assigned to Richardson "all legally assignable claims that ENE might have against Kinsale" resulting from Kinsale's disclaimer of coverage to ENE, except ENE's claim for its attorneys' fees incurred defending the underlying action and right to recover *Brandt* fees.[2] Compl. ¶ 17.

On July 17, 2017, following a one-day court trial in Sonoma County Superior Court, judgment was entered against ENE as follows:

---

[2] "*Brandt* fees" are attorneys' fees incurred by a plaintiff to enforce payment of benefits due under an insurance policy and are recoverable damages in a bad faith action against the insurer. *See Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985).

> NOW, THEREFORE, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED that Plaintiff Lillie Richardson recover from Defendant ENE Elite National Escrow Inc. monetary damages for negligence in the sum of $60,000 and
>
> IT IS FURTHER ADJUDGED, ORDERED, AND DECREED that, Plaintiff is awarded attorney fees and costs in the sum of [$]38,287.00.
>
> IT IS FURTHER ADJUDGED, ORDERED, AND DECREED that, Plaintiff is entitled to additional attorney fees and costs until said judgment is satisfied.

Lytle Decl. Ex. C (Judgment); Def.'s RJN Ex. B (Minute Order).

### B. The Kinsale Allied Realty Professional Liability Policy

Kinsale issued a professional liability policy number 0100014724-2 to ENE as the named insured covering the period October 3, 2015 to October 3, 2016 ("the Policy"). Lytle Decl. Ex. B (Policy). The policy contains the following "Insuring Agreement":

> [Kinsale] will pay, in excess of the Deductible shown in the Declarations, those sums any "insured" becomes legally obligated to pay as "damages" and "defense costs" because of a "claim" for a "wrongful act" arising out of "professional services" rendered or that should have been rendered.

Policy at ENE 0017. The policy defines certain terms in the Insuring Agreement as follows:

> C. "Claim" means a written demand for monetary "damages" arising out of a "professional service" made against the "insured".
>
> D. "Damages" means any compensatory amount any "insured" is legally obligated to pay as a result of a "claim" to which this Policy applies, including judgments, awards and settlements. . . .
>
> E. "Defense costs" means:
>
> > 1. Attorney's fees, expert witness fees and other fees and costs, including pre-judgment and post-judgment interest, paid by us or by you with our prior written consent, in the investigation and defense of covered "claims";
> >
> > 2. All other fees, costs and expenses resulting from the investigation, defense, settlement and appeals of a covered "claim" as authorized by us;
> >
> > 3. Premiums for bonds required as a result of a covered "claim", including bonds to release attachments, but only for bond amounts not exceeding the applicable Limit of Insurance.
>
> . . .
>
> M. "Professional services" means only those activities listed below

> that are designated as covered "professional services" on the Declarations of this Policy and that are rendered by or on behalf of the "named insured" for others . . . as an escrow agent.
>
> . . .
>
> O. "Wrongful act" means any actual or alleged negligent act, error, omission.

*Id*. at ENE 0018-19.

The policy also includes a list of exclusions. It provides in relevant part that

> [t]his Policy does not apply to any "claim", "wrongful act", "damages" or "defense costs" based upon, arising out of, or in any way involving any actual or alleged:
>
> . . .
>
> D. Commingling, conversion, embezzlement or misappropriation of, inability or failure to pay, collect or return, any money, premium or tax[.]

*Id*. at ENE 0019-20.

### C. Procedural History

On May 18, 2018, Richardson and ENE filed this action against Kinsale, asserting four claims for relief: 1) recovery of the judgment in the state court action via direct action under California Insurance Code section 11580; 2) breach of the implied covenant of good faith and fair dealing, based on Kinsale's disclaimer of coverage and refusal to defend and indemnify ENE in the underlying action; 3) breach of contract, based on Kinsale's disclaimer of coverage in the underlying action and denial of indemnification; and 4) declaratory relief, seeking a declaration that Kinsale owed ENE a duty to defend. ENE subsequently dismissed its claims against Kinsale and is no longer a party. [Docket No. 38.]

The court held an initial case management conference on December 19, 2018 and set April 8, 2019 as the last date to file dispositive motions. [Docket No. 33.] Richardson timely filed a motion for summary judgment. [Docket No. 37.] Kinsale filed untimely dispositive motions to dismiss the complaint and for summary judgment on April 16 and 22, 2019. On April 24, 2019, the court issued an Order to Show Cause, directing Kinsale to show cause why its motions should not be denied as untimely. [Docket No. 48.] On May 1, 2019, following its receipt of Kinsale's response to the Order to Show Cause, the court denied the motion to dismiss as untimely, noting

1  that it was duplicative of the motion for summary judgment. In the interest of addressing the case

2  on its merits, the court allowed Kinsale's motion for summary judgment, which essentially

3  parallels the issues raised in the summary judgment motion filed by Richardson. [Docket No. 51.]

### III. LEGAL STANDARD

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id.* at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id.* at 249.

To defeat summary judgment once the moving part has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id*.

## IV. DISCUSSION

Both parties move for summary judgment on the question of whether the policy provides coverage for the state court judgment entered against ENE.[3] Richardson argues that the state court judgment awarded her monetary damages for ENE's "negligence," and that the insurance policy therefore covers the judgment. *Id*. at 8. Specifically, Richardson asserts that ENE's negligence in failing to follow the escrow instructions to pay her full tax liability is a covered event under the policy, because the policy states that Kinsale will pay "'damages' and 'defense costs' because of a 'claim' for a 'wrongful act' arising out of 'professional services' rendered," and defines "wrongful act" as "any actual or alleged negligent act, error, omission."

Kinsale asserts that it is entitled to summary judgment on Richardson's claim for breach of contract, arguing that it did not breach its duty to indemnify ENE for the judgment because the claims alleged in the state court action fall under an exclusion and are not covered under the policy. Specifically, it argues that Exclusion D, which excludes coverage for "any 'claim', 'wrongful act', 'damages' or 'defense costs' based upon, arising out of, or in any way involving any actual or alleged . . . inability or failure to pay, collect or return, any money, premium or tax[,]" applies to Richardson's claims against ENE and bars coverage for the state court judgment. *Id*. at 10 (quoting Policy at ENE 0019-20). Kinsale further argues that Richardson's remaining claims for relief fail as a matter of law for the same reason.

Both parties' summary judgment motions present questions of law, and do not involve disputed facts.

### A. Insurance Coverage Under California Law

#### 1. The Duty to Indemnify

"Standard comprehensive or commercial general liability insurance policies provide, in pertinent part, that the insurer has a duty to indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for any covered claim." *Buss v. Superior Court*, 16 Cal. 4th 35, 45 (1997). "The insurer's duty to indemnify runs to claims that are actually covered,

---

[3] Richardson's motion addresses her claim as ENE's assignee that the Kinsale insurance policy provides coverage for the state court judgment against ENE. Kinsale does not dispute that Richardson has a valid assignment of rights from ENE. Def.'s Mot. 9.

in light of the facts proved." *Id.* The duty to indemnify has a narrower scope than the duty to defend, which arises whenever an action alleges any claim that the policy in question "potentially" could cover. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295, 299 (1993).

### 2. Governing Interpretation Principles

In California, interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003). Contract interpretation aims to give effect to the mutual intention of the parties. *Id.* The court should infer this intent, if possible, solely from the written provisions of the contract, as interpreted in their "ordinary and popular sense." *Id.* at 648 (citation and quotation marks omitted). An exception to this "ordinary and popular" rule arises when the parties have used a given term in a "technical sense" or where a "special meaning" is given to a term "by usage." *Id.* (citation and quotation marks omitted). In such cases, the court should read the term with reference to that special meaning or technical sense. If a policy provision is relevant but ambiguous, i.e., susceptible of two or more reasonable constructions, the court may admit extrinsic evidence to determine its proper interpretation. *See Palacin v. Allstate Ins. Co.*, 119 Cal. App. 4th 855, 862 (2004).

Under general principles of interpretation, the court strictly construes policy exclusions and broadly construes exceptions to exclusions in favor of the insured. *Arenson v. Nat'l Auto. & Cas. Ins. Co.*, 45 Cal. 2d 81, 83 (1955). To the extent any language in the policy is ambiguous, the court will construe that language in favor of the insured. *Id.*; *accord State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 202 (1973) (holding that exclusionary language must be "*conspicuous, plain and clear*" (quotation omitted) (emphasis in original)); *see also Minkler v. Safeco Ins. Co.*, 49 Cal. 4th 315, 322 (2010) ("The 'tie-breaker' rule of construction against the insurer stems from the recognition that the insurer generally drafted the policy and received premiums to provide the agreed protection." (citation omitted)). "[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." *State Farm Mut. Auto. Ins. Co.*, 10 Cal. 3d at 201. An insurer must state "'any exception to the performance of the basic underlying obligation . . . [so] as clearly to apprise the insured of its effect.'" *Id.* (quoting *Gray v.*

8

*Zurich Ins. Co.*, 65 Cal. 2d 263, 269 (1966)).

**B. Analysis**

Exclusion D excludes from coverage for "any 'claim', 'wrongful act', 'damages' or 'defense costs' based upon, arising out of, or in any way involving any actual or alleged . . . failure to pay . . . any money, premium or tax[.]" Policy at ENE 0019-20. Under California law, the term "arising out of" is construed broadly, even where the phrase appears in an exclusion. *Jon Davler, Inc. v. Arch Ins. Co.*, 229 Cal. App. 4th 1025, 1035 (2014). "The term '[a]rising out of' is a broad concept requiring only a slight connection or an incidental relationship between the injury and the excluded risk." *Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.*, 106 Cal. App. 4th 293, 301 (2003) (quoting *Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 128 (1996)) (internal quotation marks omitted). Courts "generally equate[ ] 'arising out of' with 'origination, growth or flow from the event.'" *Southgate*, 106 Cal. App. 4th at 301 (quoting *Pacific Indem. Co. v. Truck Ins. Exch.*, 270 Cal. App 2d 700, 704 (1969)). When considering such language, the court must "examine the conduct underlying the . . . lawsuit, instead of the legal theories attached to the conduct." *Southgate*, 106 Cal. App. 4th at 301 (internal quotation marks and citation omitted); *accord St. Paul Mercury Ins. Co. v. Mountain W. Farm Bureau Mut. Ins. Co.*, 210 Cal. App. 4th 645, 658 (2012) (noting that language such as "arising out of" or "arising from" "does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship.").

Richardson's state court complaint alleges three claims for relief. Each is based on the allegation that Richardson provided ENE with escrow instructions that directed payment of the current and delinquent taxes, and that ENE failed to pay the delinquent taxes in full. *See* State Court Compl. ¶¶ 8-10, 17, 24-30, 36-39. For example, her breach of contract claim in the underlying action is based on the allegation that "Defendants . . . breached the contract by failing to pay the 2010-2011 taxes due and owing on Plaintiff's real property . . . ." *Id.* at ¶ 30. Similarly, her negligence claim is based on the allegation that "Defendants . . . carelessly and negligently

9

closed the escrow without paying off all the real property taxes assessed against Plaintiff's real property . . . ." *Id*. at ¶ 38. Richardson's elder abuse claim alleges that she deposited funds into escrow to be used to pay her delinquent taxes, that she and the lender instructed ENE to pay the current and delinquent taxes, that ENE failed to pay the delinquent taxes in full, and that ENE subsequently refused to "pay the taxes or to return Plaintiff's money deposited into the escrow to pay said taxes." *Id*. at ¶¶ 8-10, 16. Richardson's prayer for relief in the underlying action sought $13,159.96, representing the total sum due to resolve her tax liability, in addition to compensatory damages, punitive damages, and attorneys' fees and costs. *See id*. at ¶ 32; Prayer.[4] Each of these claims alleges injury "based upon, arising out of, or in any way involving any actual or alleged . . . failure to pay . . . any money, premium or tax," and thus fall squarely within Exclusion D.

Richardson does not grapple with the language of Exclusion D nor does she address the construction of the term "arising out of." Instead, she argues that the underlying action was not "about the collection or payment of taxes," and therefore does not fall within the exclusion. Pl.'s Opp'n 4. Her primary argument is that the state court judgment "is for the negligence of ENE['s] . . . escrow officer for failing to follow instructions" that directed the payment of the delinquent taxes. She relies on the language of the judgment ordering ENE to pay her "monetary damages for negligence in the sum of $60,000." *Id*. at 4-5. According to Richardson, the policy covers claims based on "wrongful acts," and defines wrongful acts as "any actual or alleged negligent act, error, omission." Therefore, she argues, her judgment for negligence is covered by the policy and is not subject to Exclusion D.

Richardson's reliance on the wording of the state court judgment inappropriately ignores the nature of the conduct that supported her claim for negligence. Under California law, "[i]t is not the underlying claims' legal theories that control coverage and exclusions—it is their facts." *Southgate*, 106 Cal. App. 4th at 302; *see also Energy Ins. Mut. Ltd. v. Ace Am. Ins. Co.*, 14 Cal.

---

[4] The complaint in the underlying action appears to contain a typographical error regarding this sum. In paragraph 42, Richardson alleged that the "penalties and interest for late payment assessed by the Assessor's Office" was the sum of $13,150.96. However, elsewhere in the complaint she lists this sum as $13,159.96. *See* State Court Compl. ¶¶ 19, 31, Prayer.

10

App. 5th 281, 299 (2017) ("[u]ltimately, it is the nature of the conduct, not the source of law that governs whether an exclusion applies."). Here, the "basic occurrence that caused [Richardson's] injuries" was ENE's failure to pay the delinquent taxes in full. *See Energy Ins. Mut. Ltd.*, 14 Cal. App. 5th at 299 (concluding that "the basic occurrence that caused the injuries" was a "failure to render professional services" and thus excluded from coverage under policy exclusion). At the hearing, Richardson's counsel repeatedly argued that ENE's wrongful act was its failure to follow the escrow instructions, and that the failure to follow escrow instructions formed the basis for the state court judgment for negligence. This argument ignores the critical fact that the escrow instruction at issue was to pay Richardson's delinquent property taxes in full. ENE's failure to pay the full amount of taxes was the act that damaged Richardson. Put another way, ENE's liability would not exist in the absence of its failure to pay the full amount of Richardson's property taxes.

Exclusion D excludes from coverage "any 'claim', 'wrongful act', 'damages' or 'defense costs' based upon, arising out of, or in any way involving any actual or alleged . . . failure to pay . . . any money, premium or tax[.]" The term "arising out of" requires "only a slight connection or an incidental relationship between the injury and the excluded risk." *Southgate*, 106 Cal. App. 4th at 301. The court concludes that Richardson's allegations against ENE in the underlying action arose out of its failure to pay the property taxes. Her claims in the underlying action thus fall within Exclusion D and are not within the scope of coverage. Accordingly, Kinsale did not breach its duty to indemnify ENE for the judgment and is entitled to summary judgment on Richardson's breach of contract claim. This determination is dispositive of Richardson's remaining claims for recovery of the judgment under California Insurance Code section 11580, breach of the implied covenant of good faith and fair dealing, and declaratory relief. *See Delgado v. Interins. Exch. of Auto. Club of S. Cal.*, 47 Cal. 4th 302, 308 n.1 (2009) (holding that a conclusion that an insurer did not have a duty to defend or indemnify is dispositive of a claim by a judgment creditor under Cal. Ins. Code § 11580); *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990) ("[w]here benefits are withheld for proper cause, there is no breach of the implied covenant.").

## V. CONCLUSION

For the foregoing reasons, the court grants Kinsale's motion for summary judgment and denies Richardson's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: May 30, 2019



Donna M. Ryu
Judge Donna M. Ryu
United States Magistrate Judge